805 So.2d 888 (2001)
AUTO-OWNERS INSURANCE COMPANY, a Michigan corporation, Appellant,
v.
MARVIN DEVELOPMENT CORPORATION, Appellee.
No. 2D00-3232.
District Court of Appeal of Florida, Second District.
October 12, 2001.
*889 Curtright C. Truitt of Curtright C. Truitt, P.A., Fort Myers, for Appellant.
Aaron A. Haak and Mark A. Ebelini of Humphrey & Knott, P.A., Fort Myers, for Appellee.
SILBERMAN, Judge.
Auto-Owners Insurance Company appeals from a final summary judgment that determined it was obligated to defend against a claim brought against Marvin Development Corporation. We reverse because the claim was not covered under the terms of the insurance policy issued by Auto-Owners and, as a result, Auto-Owners had no duty to defend against the claim.
Auto-Owners filed a complaint for declaratory judgment against Marvin Development, Karon Rathgeber, and Robert Rathgeber. The complaint alleged that the Rathgebers had previously filed suit against Marvin Development on numerous theories, including negligent misrepresentation.
The Rathgebers' claims arose from a 1988 building agreement with Marvin Development. They alleged in their revised *890 fourth amended complaint that, pursuant to the agreement, Marvin Development was to construct a residence for them. The contract price included the purchase of the lot on which the house was to be built. Simultaneous with the execution of the building agreement, the Rathgebers entered into a separate contract to purchase the lot from its owner. The Rathgebers asserted that the lot was sold to them by representatives of Marvin Development, acting on behalf of Marvin Development and the lot owner, as part of the package for the construction of the house.
The Rathgebers took possession of the residence in May 1989, after construction was completed. They alleged that cracks appeared in 1993. They subsequently learned that the house was situated on pockets of debris which, as the debris decomposed, caused settling and deterioration of the house. The Rathgebers claimed that Marvin Development and the lot owner should have known that debris was buried under the lot and made the lot unsuitable as a home site. The Rathgebers asserted that they justifiably relied on the representations made by Marvin Development and the lot owner that the site was suitable for construction of a residence.
In its complaint for declaratory relief, Auto-Owners acknowledged that it insured Marvin Development under commercial general liability policies. The first policy became effective in November 1989, several months after the Rathgebers took possession of the residence. Coverage continued until November 1994. Auto-Owners sought a declaration that the damages claimed by the Rathgebers were not covered by the policies and that Auto-Owners had no duty to defend or indemnify Marvin Development against the Rathgebers' claims.
Marvin Development responded to the Auto-Owners' complaint and asserted various defenses. Eventually, Auto-Owners and Marvin Development filed competing motions for summary judgment. Auto-Owners reiterated its position that the Rathgebers' claims against Marvin Development were not covered by the insurance policies and that Auto-Owners had no duty to defend or to indemnify Marvin Development against the claims.
Marvin Development alleged that Auto-Owners had a duty to defend and indemnify Marvin Development against the claims. Marvin Development asserted that logs or wood piles were buried on the lot below the footer trenches of the house and were decaying; that Marvin Development did not bury the debris and was unaware of it; and that Marvin Development built the house but did not perform any site work on the lot.
The trial court entered a final summary judgment in favor of Auto-Owners and against Marvin Development concerning insurance coverage as to all but one of the claims made by the Rathgebers. As to the claim of negligent misrepresentation, the trial court entered summary judgment in favor of Marvin Development and concluded that Auto-Owners had the obligation to defend Marvin Development against that claim. The trial court did not decide whether Auto-Owners was liable to indemnify Marvin Development for any loss incurred as a result of the claim.
The only part of the judgment that is before this court is the ruling that Auto-Owners must defend Marvin Development against the Rathgebers' claim for negligent misrepresentation. Auto-Owners argues that because its policies did not provide coverage for the claim, it had no duty to defend Marvin Development. We agree.
*891 The applicable standard of review is de novo because the interpretation of an insurance contract is a question of law. Am. Equity Ins. Co. v. Van Ginhoven, 788 So.2d 388 (Fla. 5th DCA 2001). In considering whether Auto-Owners must defend Marvin Development against the Rathgebers' claim, the question is whether the complaint, "when fairly read, alleges facts which create potential coverage" under the policies. McCreary v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n, 758 So.2d 692, 695 (Fla. 4th DCA 1999). An insurer has no duty to defend a lawsuit where the underlying complaint does not allege facts that would bring the complaint within the coverage of the policy. Nat. Union Fire Ins. Co. v. Lenox Liquors, Inc., 358 So.2d 533, 536 (Fla. 1977); Aetna Commercial Ins. Co. v. Am. Sign Co., 687 So.2d 834, 836 (Fla. 2d DCA 1996).
The Auto-Owners' policies were commercial general liability policies. They were first issued in late 1989 after the alleged misrepresentations were made, after Marvin Development completed construction, and after the Rathgebers took possession of the residence. The pertinent policy language provided:
[Auto-Owners] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.
* * *
This insurance applies to "bodily injury" and "property damage" only if:
(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
(2) The "bodily injury" or "property damage" occurs during the policy period.
Apart from the coverage provision, a "Products-Completed Operations Hazard" exclusion stated:
This insurance does not apply to "bodily injury" or "property damage" included within the "products-completed operations hazard."
The exclusion, when read in the context of the entire policy, eliminated coverage for claims of bodily injury and property damage arising after Marvin Development completed its work.
Marvin Development asserts that the exclusion did not apply because of an exception contained in the policy. It claims that the policy provided coverage for property damage arising from tools, uninstalled equipment, and abandoned or unused materials remaining on the property. This argument fails because the Rathgebers did not allege facts that would lead to the conclusion that the buried debris consisted of the items described in the exception.
The fact that some unknown person or entity, at some unknown time, may have buried on the property wood debris or logs unrelated to the construction of the house was insufficient to invoke the exception to the exclusion. The absence of allegations in the Rathgebers' underlying complaint to bring the claim within the coverage of the policy results in Auto-Owners not having a duty to defend against the claim. See Aetna Commercial Ins. Co., 687 So.2d at 836.
Marvin Development also argues that the completed operations exclusion did not apply because the misrepresentations occurred before its construction work was completed, and the physical damage to the property occurred during the policy period. In support, Marvin Development cites Florida Farm Bureau Mutual Insurance *892 Co. v. Gaskins, 405 So.2d 1013 (Fla. 1st DCA 1981).
In Florida Farm, a supplier delivered an herbicide instead of an insecticide to one of its customers. When the customer applied the chemical, his crop was destroyed. The supplier paid damages to the customer and sought indemnity from its insurance carrier, Florida Farm. The carrier claimed that there was no coverage because of the "products hazards" and "completed operations" exclusions to the insurance policy. On appeal, the court concluded that the exclusions did not apply because the proximate cause of damage was the supplier's negligence in delivering the wrong product to the customer before the supplier's completion of operations. Id. at 1014-15.
Florida Farm is distinguishable from the present case based on the circumstances and the policy language involved in each case. In Florida Farm, the court concluded that the proximate cause of damage was the supplier's negligence in delivering the wrong product, rather than a defect in the product itself. Liability arose at the time of delivery of the wrong product. Id. at 1014-15.
By contrast, Marvin Development argues that there was a duty to defend based on the allegations made by the Rathgebers that Marvin Development misrepresented the suitability of the lot for construction of a residence and that Marvin Development knew that its representation concerning the suitability was false at the time that the representation was made. The claim here, unlike in Florida Farm, is not based on liability for delivery of the wrong product. The claim of the Rathgebers is more akin to a claim that Marvin Development failed to warn about existing defects or that Marvin Development breached an implied warranty with respect to the fitness of the property. See, e.g., K-C Mfg. Co., Inc. v. Shelby Mut. Ins. Co., 434 So.2d 1004, 1006-07 (Fla. 1st DCA 1983).
Another case providing guidance is Prieto v. Reserve Insurance Co., 340 So.2d 1282 (Fla. 3d DCA 1977). In Prieto, the court affirmed a denial of insurance coverage for death and injuries resulting from the collapse of a building. The insurance policy provided coverage for an occurrence or an accident that resulted in bodily injury or property damage during the policy period. The insured claimed that the covered occurrence was the negligent repair work made to the building during the policy term. The insurance company asserted that no coverage existed because the event giving rise to the claim, the collapse of the building resulting in injury or damage, occurred after termination of the policy period. The appellate court agreed that there was no coverage because the occurrence was the actual accident, the collapse of the building resulting in injury or damage, and it took place after the termination of the policy. Id. at 1283.
In construing an insurance policy for the purposes of determining coverage, the policy must be considered in its entirety. If reasonably possible, the construction to be adopted is the one that will give effect to the total policy and to each of its provisions. If the language of the policy is clear and unambiguous, the language should be given its natural meaning. New Amsterdam Cas. Co. v. Addison, 169 So.2d 877, 880 (Fla. 2d DCA 1964). Under the terms of the Auto-Owners' policies and in light of the allegations made by the Rathgebers in their underlying complaint, the exclusion applied because the property damage occurred after Marvin Development completed construction of the residence. Thus, Auto-Owners did not have a duty to defend Marvin Development against the claim made by the Rathgebers.
We also note that the Auto-Owners' insurance policies were not warranty *893 policies providing coverage for construction deficiencies or defective workmanship. Comprehensive liability policies generally do not provide coverage to a contractor for deficiencies in its own work. See La-Marche v. Shelby Mut. Ins. Co., 390 So.2d 325, 326 (Fla.1980); Tucker Constr. Co. v. Michigan Mut. Ins. Co., 423 So.2d 525, 528 (Fla. 5th DCA 1982).
Because we conclude that the claim for negligent misrepresentation made by the Rathgebers against Marvin Development was not covered under the terms of the insurance policies, we reverse, in part, the order granting and denying the motions for final summary judgment. We reverse those portions of the order which determined that Auto-Owners was obligated to defend Marvin Development as to the claim for negligent misrepresentation contained in count five of the Rathgebers' revised fourth amended complaint, and we remand for further proceedings consistent with this opinion.
Reversed and remanded.
WHATLEY, A.C.J., and CASANUEVA, J., Concur.